# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JANELLE SCHNULLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-CV-00109 JCH |
| | ) |
| SOMATICS, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Somatics, LLC's ("Somatics" or "Defendant") motion to dismiss portions of Count One, as well as Counts Two through Seven of Plaintiff Janelle Schnulle's ("Schnulle" or "Plaintiff"), complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), and to strike immaterial allegations from Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(f).  Doc. [11].  Plaintiff responded to the motion (Doc. [15]), Defendant filed a reply (Doc. [16]), and the matter is fully briefed and ripe for disposition. For the reasons set forth below, Defendant's motion will be granted in part and denied in part.

**I.     Factual and Procedural Background**

Taken as true for the purpose of this motion, the facts alleged in the complaint are as follows.  From April 10, 2015, through January 29, 2016,  Plaintiff underwent 33 sessions of Electroconvulsive Therapy (ECT) using the Thymatron System IV device at Mercy Hospital in St. Louis, Missouri.  This ECT device was supplied by Somatics, which, manufactures, promotes, and distributes the device. Plaintiff alleges that undergoing ECT treatment with the device caused permanent neurological damages impairing her ability to learn, retain, and recall information.  Plaintiff also alleges that despite knowing of the substantial risks associated with

ECT treatment, Somatics manufactured and distributed the device and failed to warn of those risks.

Plaintiff filed this seven count complaint on January 27, 2021, alleging: negligence (Count One), strict liability (Count Two), breach of implied warranty of merchantability (Count Three), breach of implied warranty of fitness for a particular purpose (Count Four), breach of express warranty (Count Five), violation of the Missouri Merchandising Practices Act ("MMPA") (Count Six), and fraud (Count Seven).

## II.     Legal Standard

Defendant has moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises . . . thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory," and "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [each element]." *Twombly*, 550 U.S. at 562. The reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, but it is not required to accept the legal conclusions that plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

Federal Rule of Civil Procedure 9(b) establishes a heightened pleading standard for complaints alleging fraud. The Eighth Circuit has described Rule 9(b)'s particularity requirement: Rule 9(b)'s particularity requirement demands a higher degree of notice than that required for other claims, and is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations. To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result. Put another way, the

3

complaint must identify the "who, what, where, when and how" of the alleged fraud. *United States ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 556 (8th Cir.2006) (internal citations omitted). A plaintiff must state an underlying basis for its assertions sufficient to provide an indicia of reliability. *Id.* at 557 (citation omitted). While a plaintiff need not allege specific details of every alleged fraud, the plaintiff must provide some representative examples of the alleged misconduct. *Id.*

### III.  Discussion

#### A. Negligence—Count One

In Count One of her complaint, Plaintiff asserts negligence by Defendant under various theories of liability.  More specifically, Plaintiff alleges that Defendant was negligent by: (a) failing to provide adequate warnings to the medical community and the public about the risks of ECT; (b) failing to adequately research, test, and analyze the safety of the ECT device; (c) failing to adequately investigate the reports of serious adverse events, including but not limited to permanent memory loss, neurocognitive decline, death, burning, and brain injury; (d) failing to adequately report adverse event to the FDA; (e) failing to comply with applicable federal laws and regulations governing medical device manufacturers, including but not limited to, the Federal Food, Drug, and Cosmetic Act, as amended by the Medical Device Amendments of 1976; (f) failing to inform and warn the medical community, patients, and the public that the safety and efficacy of the ECT has never been demonstrated; and (g) falsely assuring the medical community, patients, and the public that ECT remains the safest and most effective treatment for severe depression.  Defendant argues that paragraphs (c)-(e) of Plaintiff's complaint must be dismissed because these theories of liability are impliedly preempted under the Medical Device Amendments (MDA) to the Food, Drug and Cosmetic Act.  Defendant also argues that

4

paragraphs (a), (f), and (g) must be dismissed because they are barred by the "learned intermediary" doctrine under Missouri law.

i. Federal Preemption of State Law Claims

In 1976, Congress passed the Medical Device Amendments to the Food, Drug, and Cosmetic Act. *See* 21 U.S.C. § 360c *et seq*. The amendments authorized the FDA to "regulate the safety and effectiveness of medical devices." *In re Medtronic, Inc.,* 623 F.3d 1200, 1203 (8th Cir. 2010). Section 337(a) of the MDA provides that all actions to enforce FDA requirements "shall be by and in the name of the United States." 21 U.S.C. § 337(a). In *Buckman Co. v. Plaintiffs' Legal Comm.,* the United States Supreme Court interpreted this provision to mean that even state claims that run parallel to federal requirements are preempted unless they are grounded in traditional state tort law, and do not depend exclusively on a federal requirement. *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 343 (2001).

The Eighth Circuit has held that *Buckman* and related cases create only a "narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied preemption." *Id.* As such, a plaintiff "must be suing for conduct that violates the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (as such a claim would be impliedly preempted under *Buckman* )." *In re Medtronic, Inc.,* 623 F.3d at 1204 (quoting *Riley v. Cordis Corp.,* 625 F.Supp.2d 769, 777 (D. Minn. 2009)). This does not mean that a plaintiff can never bring a state law claim based on conduct that violates the FDCA. In fact, the conduct that gives rise to the claim *must* violate the FDCA to escape express preemption. *Riley*, 625 F. Supp. 2d at 777. Instead, to avoid implied preemption, the conduct giving rise to the state claim must also be the type of conduct that would traditionally give rise to liability under state law even if the FDCA had never been enacted. *Id*.

5

(citing *Buckman*, 531 U.S. at 352-53) (a private litigant cannot bring a state-law claim against a defendant when the state-law claim is in substance, even if not in form, a claim for violating the FDCA—that is, when the state claim would not exist if the FDCA did not exist.).

Somatics argues that the theories of negligence Plaintiff alleges in paragraphs (c)-(e) of her complaint must be dismissed because they based on nothing more than a failure to comply with the requirements of the FDCA, and thus are impliedly preempted under *Buckman*.  The Court agrees.  In paragraph 64(c) of her complaint, Plaintiff alleges that Somatics was negligent by failing "to adequately investigate the reports of serious adverse events, including but not limited to permanent memory loss, neurocognitive decline, death, burning, and brain injury that they knew about or should have known about."  Somatics argues that Plaintiff is essentially claiming that Somatics was negligent by failing to adhere to the requirements of the FDCA, which requires device manufacturers to investigate and evaluate the cause of all reported adverse events.  As there is no common law duty in Missouri to do so, this allegation is based on a federal requirement with no correlative state law duty, and is impliedly preempted.  In paragraph 64(d) of her complaint, Plaintiff alleges that Somatics was negligent by failing "to adequately report adverse events to the FDA."  This too is no more than an assertion that Somatics failed to comply with the reporting requirements of the FDCA, and it is likewise impliedly preempted.  *See Medtronic*, 623 F.3d at 1205-06 (plaintiff's allegation that defendant failed to file adverse event reports is impliedly preempted).  Finally, in paragraph 64(e) Plaintiff alleges that Somatics was negligent by failing to comply with applicable federal laws and regulations governing medical devices.  Again, there is no Missouri common law duty that Somatics comply with the requirements of the FDCA, and this claim too is impliedly preempted.  Accordingly, the Court

6

will dismiss Plaintiff's negligence claims in Count One to the extent that they are reliant on the preempted theories of negligence set forth in paragraphs 64 (c)-(e) of Plaintiff's complaint.

### ii. Learned Intermediary Doctrine

In Paragraphs 64(a), (f), and (g) of her complaint, Plaintiff alleges that Somatics was negligent by failing to warn "the medical community," "the public," and "patients" about the dangers associated with using the Thymatron device. Somatics alleges that the theories of negligence set out in Paragraphs 64(a), (f), and (g) of Plaintiff's complaint must be dismissed because Plaintiff has not alleged facts sufficient to show that the learned intermediary doctrine does not bar them.

The learned intermediary doctrine provides that a drug manufacturer has a duty to warn a physician of the risks involved with its product. The physician then acts as a "learned intermediary" between the manufacturer and the physician's patient so that any warning given to the physician is deemed a warning to the patient. *Kirsch v. Picker Int'l, Inc.,* 753 F.2d 670, 671 (8th Cir.1985); *Doe v. Alpha Therapeutic Corp.,* 3 S.W.3d 404, 419 (Mo. Ct. App. 1999). Under the learned intermediary doctrine, a manufacturer's inadequate warning to a physician is not the proximate cause of a patient's injury if the prescribing physician had independent knowledge of the risk that an adequate warning would have communicated. *Alpha Therapeutic Corp.,* 3 S.W.3d at 420.

A review of cases discussing Missouri's learned intermediary doctrine indicates that it is typically asserted by a defendant as an affirmative defense to a failure to warn claim. *See, e.g., Alpha Therapeutic Corp.,* 3 S.W.3d at 418–421; *Stanger v. Smith & Nephew, Inc.,* 401 F.Supp.2d 974, 984 (E.D. Mo. 2005); *Wright v. American Home Products Corp.,* No. 06–CV–4183–NKL, 2008 WL 1820902 at *3 (W.D. Mo. April 18, 2008). Therefore, even assuming

7

that the learned intermediary doctrine applies in this instance, Plaintiff was not required to plead facts tending to negate it in order to survive a motion to dismiss, and Somatic's motion to dismiss claims of negligence premised on theories of liability outlined in Paragraphs 64(a), (f), and (g) of her complaint is denied.

### B. Strict Liability—Count Two

In Count Two of her complaint, Plaintiff brings a strict liability claim alleging that the Thymatron was defective and unreasonably dangerous when "manufactured, designed, labeled, promoted, and instructed practitioners, who [sic] is strictly liable for the injuries caused from its use"; that the Thymatron "failed to perform in a manner that a reasonable consumer would expect"; and that Defendant "knew the device was defective and dangerous and nonetheless failed to warn the public of the defects." Defendant moves to dismiss this Count, alleging that Plaintiff has done nothing more than provide a formulaic recitation of the elements of her claim to support her design and manufacturing defect claims.

Missouri has adopted Section 402A of the Restatement (Second) of Torts, which imposes strict liability in tort on sellers and manufacturers for selling "any product in a defective condition [un]reasonably dangerous to the user or consumer" that results in injury to the user or consumer. *Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 364 (Mo. 1969). This strict liability theory is applicable to defective design and manufacture of a product, as well as failure to warn. *See Blevins v. Cushman Motors*, 551 S.W.2d 602 (1977); *Grady v. American Optical Corp.,* 702 S.W.2d 911 (1985). A manufacturing defect "refers to the improper assembly of an individual product," and a design defect "refers to a product, by nature of its design, being unreasonably dangerous." *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748, 792 (Mo. Ct. App. 2008).

"In a design defect case, the plaintiff must demonstrate that the product, as designed, is unreasonably dangerous and therefore defective, and that the demonstrated defect caused [her] injuries. The heart and soul of a strict liability design defect case is unreasonable danger and causation. While a plaintiff must establish that a product is defective by proving that it was unreasonably dangerous as designed, [she] is not required to show that the manufacturer or designer is at fault." *Id*. (internal quotations and citations omitted). Plaintiff alleges that the Thymatron was unreasonably dangerous because Defendant never conducted any clinical trials to test its safety, and cites to scientific literature stating that the electrical current that an ECT patient receives is 200 times what is considered dangerous for ground fault leakage, is 100 times that produced by Tasers, cattle prods, and electric fences, and 400 times that required to damage a brain cell. Compl. ¶¶ 10-14, 27, 49. To support her claim for manufacturing defect, she alleges that although she was prescribed ECT treatment as an effective means of treating depression, the "ECT did not generate improvement" in her symptoms. The Court finds that Plaintiff's allegations are sufficient, at this early stage of the proceedings, to allege claims for design and manufacturing defects sufficient to survive Defendant's motion to dismiss. Count Two of the complaint will not be dismissed.

**C. Breach of Implied Warranty—Counts Three and Four**

In Counts Three and Four Plaintiff brings claims for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose. Defendant asserts that these claims fail because Plaintiff did not allege that she provided the required notice to Somatics of her injury, and because she does not allege any particular purpose for which the goods were used that is different than their ordinary use. Plaintiff does not contest Defendant's

9

arguments in her response to the motion to dismiss, and in fact, agrees that these claims should be dismissed. Accordingly, Counts Three and Four will be dismissed.

### D. Breach of Express Warranty—Count Five

In Count Five of her complaint, Plaintiff alleges breach of express warranty, stating that Somatics expressly warranted to the public and the medical community that its Thymatron ECT device was the safest and most effective treatment for severe depression; that it did not cause brain injury or memory loss; and that it did not cause long-term effects on intellectual ability or memory. Plaintiff further alleges that she relied on this warranty, which she asserts was false.

Defendant argues that her claim must fail because she does not plead the elements of a breach of express warranty. More specifically, Defendant asserts that she fails to allege when or by what means Plaintiff or her treating physicians relied on any representations by Somatics, or how such representations constituted a material factor inducing her to purchase the goods. Defendant further argues that the claim also fails because Plaintiff fails to allege that she provided the requisite pre-suit notice to Somatics. The Court agrees that Plaintiff fails to state a claim for breach of express warranty.

Under Missouri law, the elements of a breach of express warranty claim are: (1) the defendant sold goods to the plaintiff; (2) the seller made a statement of fact regarding the kind or quality of those goods; (3) the statement was a material factor inducing the buyer to purchase the goods; (4) the goods did not conform to the statement of fact; (5) the nonconformity harmed the buyer; and (6) the buyer notified the seller of the nonconformity in a timely fashion. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo. banc 2010); Mo. Rev. Stat. § 400.2 – 313.1(a). The buyer of the product must give some type of a pre-suit notice to the seller

10

in order to state an express breach of warranty claim. *Budach v. NIBCO, Inc.*, No. 2:14-CV-04324-NKL, 2015 WL 6870145, at *4 (W.D. Mo. Nov. 6, 2015).

Plaintiff's claim for breach of express warranty fails to state a claim because there is no allegation that any of the purported warranties were made to plaintiff or to her doctors. Plaintiff relies on an alleged statement by Somatics that the Thymatron was "the safest and most effective treatment." However, there is no showing when or by what means plaintiff, or her physicians, read or were otherwise alerted to this warranty. *See Teixeria v. St. Jude Med. S.C., Inc.*, 193 F. Supp. 3d 218, 225 (W.D.N.Y. 2016) (failure to allege when and how the alleged statements were made to plaintiff or her physicians defeats a claim for breach of express warranty). Additionally, there is no allegation of timely pre-suit notice by Plaintiff to Defendant. Therefore, Plaintiff's breach of express warranty claim will be dismissed.

**E.  MMPA and Common Law Fraud Claims—Counts Six and Seven**

In both her Missouri Merchandising Practices Act ("MMPA") claim in Count Six and her fraud claim in Count Seven, Plaintiff alleges that Somatics represented that its Thymatron device was the safest and most effective treatment for severe depression, while failing to disclose or actively concealing adverse information. She further alleges that she and her treating physicians reasonably relied on such representations, and she would not have consented to the ECT treatment had Somatics not made untrue assertions. Defendant argues that her allegations do not comply with the heightened pleading requirements of Rule 9(b) because she fails to allege with adequate specificity which misrepresentations were made to her or her doctors, how and through what medium the alleged misrepresentations were made, or when they were made. The Court agrees, and Counts Six and Seven will be dismissed.

The MMPA, Missouri's consumer fraud statute, prohibits the "act, use or employment by any person of any deception, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce[.]" Mo. Rev. Stat. § 407.020.1. To state a claim under the MMPA, a plaintiff must adequately allege that it: "(1) purchased merchandise from the defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of defendant's use of one of the methods, acts, or practices declared unlawful by the Act." *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 757 (W.D. Mo. 2015) (citing Mo. Rev. Stat. § 407.025.1).

To state a claim for fraud under Missouri law, a plaintiff must adequately allege: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc 2007).

Under Federal Rule of Civil Procedure 9(b), when alleging fraud, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." When an MMPA claim sounds in fraud, as Plaintiff's claims do here, it must satisfy the heightened pleading requirements of Rule 9(b), and a plaintiff must allege the "time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001); *see also Goldman v. Tapestry, Inc.,* 501 F. Supp. 3d 662, 671 (E.D. Mo. 2020) (plaintiff

must identify the "who, what, where, when, and how" of the alleged fraud).  Alternatively, a plaintiff claiming fraudulent omission under the MMPA must show the defendant failed to disclose material facts that were "*known to him/her,* or upon reasonable inquiry *would [have been] known to him/her.*" *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009) (citations omitted) (emphasis in original).  The Eastern and Western Districts of Missouri have consistently held that Rule 9(b) applies to MMPA cases. *See Blake v. Career Educ. Corp.*, 2009 WL 140742, at *2 (E.D. Mo. Jan. 20, 2009) (collecting cases).

Similarly, a plaintiff alleging a claim of common law fraud must "state with particularity the circumstances constituting fraud or mistake" to survive a motion to dismiss. Fed. R. Civ. P. 9(b). Additionally, "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Telephone Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (citation omitted).

Here, Plaintiff alleges generally that Defendant falsely represented that the Thymatron was safe and effective, and that she and her treating physicians relied on these representations. Missing from the Complaint, however, are specific allegations concerning precisely what misrepresentations were made to Plaintiff or her physicians, how or through what medium these misrepresentations were made, or when such misrepresentations occurred. *See Zaccarello v. Medtronic, Inc.*,  38 F.Supp.3d 1061, 1071 (W.D. Mo. 2014) (dismissing plaintiff's fraud claim for failing to identify the particular misrepresentations that were made to him and his doctors); *Blankenship v. Medtronic, Inc.*, 6 F.Supp.3d at 992 (dismissing fraud claim because it did not allege with specificity when, where, and to whom misrepresentations were made).  Because the Complaint fails to identify what particular misrepresentations and/or concealments were made to Plaintiff and Plaintiff's physicians (as opposed to the medical field generally), who made those

13

particular representations and/or omissions, and when those events occurred, Plaintiff's MMPA claim and her claim for fraud will be dismissed.

### F. Motion to Strike

Under Rule 12(f), a district court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Generally, "[s]triking a party's pleading ... is an extreme and disfavored measure." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). Consequently, motions to strike are rarely granted. *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000); *Leitner v. Morsovillo*, 21-CV-3075-SRB, 2021 WL 2669547, at *2 (W.D. Mo. June 29, 2021). Courts have observed that "motions to strike can be nothing other than distractions . . . [because if the matter objected to] is clearly irrelevant, then it will likely never be raised again . . . and can be safely ignored." *Shirrell v. St. Francis Med. Ctr.*, No. 1:13-CV-42 SNLJ, 2013 WL 3457010, at *1 (E.D. Mo. July 9, 2013) (quoting *Morgan v. Midwest Neurosurgeons*, LLC, No. 1:11-CV-37-CEJ, 2011 WL 2728334, at *1 (E.D. Mo. July 12, 2011) ); *see also Speraneo v. Zeus Tech., Inc.*, No. 4:12-CV-578-JAR, 2012 WL 2117872, at *1 (E.D. Mo. June 11, 2012) (quoting same).

Defendant alleges that the Complaint contains several immaterial, irrelevant, or inflammatory allegations, and that such matter must be stricken. Specifically, Defendant seeks to strike Paragraphs 10-14, which include information Plaintiff characterizes as providing the history of the discovery of ECT, but that Plaintiff objects to as needlessly incendiary. Defendant also seeks to strike Paragraphs 15-30 of the complaint, which Plaintiff describes as outlining the regulatory history of ECT, but that Defendant asserts is immaterial or impertinent to the case. Finally, Defendant seeks to strike Plaintiff's requests for prejudgment interest and attorneys' fees, because Defendant asserts such fees are unavailable to her.

"Impertinent" matters consist of statements that do not pertain, and are not necessary, to the issues in question. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993). Striking such matter is appropriate if it may have the effect of making the action less complicated, or otherwise streamlines the issues material to the action. *Kramer & Frank, P.C. v. Wibbenmeyer*, No. 4:05-CV-2395 (EWS), 2006 WL 30790907, *2 (E.D. Mo. Oct. 27, 2006). Redundant material refers "to statements wholly foreign to the issue or that are needlessly repetitive of immaterial allegations.  Immaterial claims are those lacking essential or important relationships to the claim for relief." *Simms v. Chase Student Loan Servicing, LLC*, 2009 WL 943552, at *2 n.3 (E.D. Mo. Apr. 6, 2009) (quotations and citations omitted).  The Eighth Circuit has ruled that even matters that are not "strictly relevant" to the claim at issue should not necessarily be stricken, if they provide "important context and background." *Stanbury,* 221 F.3d at 1063.  The Court agrees with Plaintiff that the material objected to by Defendant may serve to provide relevant background information, and is not so inflammatory as to require being stricken.  Additionally, the Court agrees with Plaintiff that it would be premature at this pleading stage to strike Plaintiff's request for prejudgment interest and attorneys' fees.  Whether such fees could be available can be more properly determined at a later date.

IV.   **Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part, as more fully described above.  Doc. [11].

**IT IS FURTHER ORDERED** that Defendant's additional Motion to Strike is **DENIED**.

Dated this 21st day of January, 2022.

/s/  Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE

15